UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OSAMA MAKAR, | ) | CASE NO. 1:19CV1185 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| THE CLEVELAND CLINIC | ) | |
| FOUNDATION. | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, SR. J**.:

This matter comes before the Court upon the Motion (ECF DKT #28) of Defendant Cleveland Clinic Foundation for Summary Judgment. For the following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

Plaintiff Osama Makar is a 62-year-old Arabic male who was born in Egypt and who is a member of the Coptic Christian faith. He became a United States citizen in 2001.

Since 2007, Plaintiff has worked as an Arabic language interpreter. First, he was employed by an agency known as Hi-Tec Interpretation. In 2013, he began working for Vocalink, Inc. Plaintiff provided interpretation services on a part-time basis primarily at the Main Campus of Defendant The Cleveland Clinic Foundation; but also accepted assignments at the hospital's satellite locations.

In early 2014, Defendant advertised for an opening in the Global Services Department for a full-time Arabic language interpreter. The job title was: Healthcare Interpreter/Global Patient Services (GPS) Coordinator. After submitting an online application for a position,

applicants were required to complete an assessment test to gauge whether they possessed the necessary skills for the position. (The assessment test was not required for subsequent job postings or for internal candidates). Then, an Human Resources recruiter would screen the applications and schedule telephone interviews with potentially qualified candidates.

Plaintiff applied on February 14, 2014. He completed the assessment test but did not receive a response or an interview. Defendant hired Nagla Ezzat, who held an Egyptian internal medicine degree, served as a resident and physician in Egypt, had significant interpretation experience and possessed a customer service background.

Later, Defendant advertised again for Arabic language interpreters to fill multiple openings. Plaintiff applied on April 28, 2014. He was granted a telephone interview and following that initial screening, Plaintiff was scheduled for a panel interview. The GPS panel was made up of five individuals, one of whom was the GPS Department Supervisor, Mustapha Bouamaria. The GPS Department panel unanimously decided not to recommend Plaintiff for the open positions and Plaintiff was notified of the Clinic's decision on May 12, 2014.

The successful candidates were Jawad Shabani, Nader Abu Mathkour and Lubna Al Allaf, who had college degrees, customer service backgrounds and interpreting experience; (some in medical settings).

Subsequently, Plaintiff learned that the reason he was not offered a position was because he lacked a bachelor's degree. (Makar Affidavit, ECF DKT #29-1). In fact, Plaintiff has a bachelor's degree and that fact was noted in his resume and application materials. *Id.*

According to Plaintiff's Affidavit (*Id.* at ¶ 16), Plaintiff learned during May and June

of 2015, that the individuals who were hired belonged to the Muslim faith because of personal conversations he had with them and because their names identified them as Muslim.

On June 23, 2014, Plaintiff filed a Charge of Religious Discrimination with the Equal Employment Opportunity Commission (EEOC) against The Cleveland Clinic Foundation.

Within a month, Plaintiff alleges that he began receiving fewer interpreting assignments for Defendant. The assignments allegedly decreased to 25 or 30 percent of what they had been prior to the EEOC Charge.

**Procedural posture**

Plaintiff filed a Complaint in Cuyahoga County Common Pleas Court against The Cleveland Clinic Foundation and Vocalink, Inc. for Religious Discrimination pursuant to Title VII of the Civil Rights Act of 1964 and R.C. § 4112.02(A); Unlawful Retaliation under R.C.
§ 4112.02; Age Discrimination under R.C. § 4112.14; and Tortious Interference with Business Relations/Contract. On May 23, 2019, the matter was removed to federal court on the basis of federal question jurisdiction. A First Amended Complaint was filed on October 22, 2019. Vocalink, Inc. was dismissed with prejudice on March 19, 2020, following a negotiated settlement.

On July 13, 2020, Defendant Cleveland Clinic filed the instant Motion for Summary Judgment. Defendant contends that Plaintiff's Age and Religious Discrimination claims lack merit. Defendant argues that Plaintiff was not objectively qualified for the Healthcare Interpreter/Global Patient Services Coordinator position and that Plaintiff cannot demonstrate that similarly situated persons outside his class were hired for the job.

Defendant further asserts that Plaintiff's Retaliation claim fails since Plaintiff cannot meet his burden to show that the Clinic subjected him to an adverse employment action. Vocalink (not the Clinic) requested that Plaintiff temporarily accept interpreting assignments at the Clinic's satellite locations, rather than at the Main Campus. Moreover, the Retaliation claim fails because the alleged retaliating actor at the Clinic did not have knowledge of the EEOC charge at the relevant time, nor can Plaintiff establish the necessary causal connection.

Lastly, as to Plaintiff's allegations that the Clinic tortiously interfered with his business and/or contractual relationship with Vocalink, Defendant contends that this claim fails. Plaintiff did not have a contract with Vocalink; there is no evidence of intentional interference with his employment relationship; and assuming the Clinic did interfere, its actions were privileged.

Plaintiff responds that there is sufficient evidence from which a reasonable trier of fact could conclude that Plaintiff has demonstrated a claim for disparate treatment Religious Discrimination under Title VII and the Ohio Revised Code and for Retaliation for engaging in protected activity pursuant to R.C. § 4112.02. However, Plaintiff concedes that Defendant is entitled to summary judgment on his Age Discrimination and Tortious Interference claims. (ECF DKT #29 at 20).

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no

genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### **Employment Discrimination**

Title VII's anti-discrimination provision makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

Because it is well-settled in Ohio that the standard for state law discrimination claims asserted under Section 4112 of the Ohio Revised Code is the same as the standard for federal discrimination claims asserted under Title VII and related civil rights statutes, the Court's analysis of Plaintiff's claims under Title VII will apply with equal force and effect to his state law claims. *See Pittman v. Cuyahoga Valley Career Center*, 451 F.Supp.2d 905, 930 (N.D. Ohio 2006); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981).

Direct evidence of employment discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Alberty v. Columbus Twp.*, 730 F.App'x. 352, 356 (6th Cir. 2018).

Comparatively, circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id*. at 358, quoting *Geiger v. Tower Auto*., 579 F.3d 614, 620 (6th Cir. 2009).

Where a plaintiff is unable to produce direct evidence of discrimination, the court must follow the tripartite burden-shifting framework first announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and subsequently modified in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, the plaintiff bears the initial "not onerous" burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Burdine*, 450 U.S. at 253. Under *McDonnell Douglas*, once the plaintiff succeeds in making a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant meets its burden, then the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a pretext. *Id.*

Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391-92 (6th Cir. 2008), citing *Burdine*, 450 U.S. at 256. Put another way, the ultimate burden of producing sufficient evidence from which the jury could reasonably reject an employer's explanation and infer the employer's intentional discrimination rests with the plaintiff at all times. *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008).

> On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry. The court first determines if a plaintiff has put forth ***sufficient evidence*** for a reasonable jury to find [him] to have met the prima facie requirements, including whether [he] has met the legitimate expectations of [his] employer. It performs the same function with respect to defendant's production of evidence, and again for the plaintiff's response to that production." (Emphasis added). *Cline v Catholic Diocese of Toledo*, 206 F.3d

-7-

651, 661 (6th Cir. 2000).

**Prima facie**

To establish a prima facie case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir.2008); *accord Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir.2007).

The burden at the prima facie stage is not an onerous one, and it is easily met. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011). The prima facie phase "merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons" for an employee's termination. *Cline*, 206 F. 3d at 660. It bears repeating, however, that though a plaintiff's prima facie burden is slight, it remains an evidentiary burden. *Id.* at 661.

**Religious discrimination**

Plaintiff is pursuing a claim of disparate treatment religious discrimination. Defendant does not dispute that Plaintiff is a member of the Coptic Christian faith, but does dispute that Plaintiff was qualified and that he was treated differently than similarly-situated individuals outside of the protected class. Plaintiff insists that he was not hired for the position of Healthcare Interpreter/Global Patient Services (GPS) Coordinator although he was qualified for the job. Plaintiff also claims that he was turned down for employment in favor of similarly-situated individuals of the Muslim faith.

Plaintiff contends that he held the necessary qualifications for the Interpreter/GPS Coordinator position. After the on-line application, Plaintiff was given a telephonic interview and then was recommended to proceed to the in-person panel interview. According to Defendant, there were 68 applicants for the position, and Plaintiff was one of 12 individuals who successfully reached the final interview stage. Plaintiff worked as an Arabic language interpreter for outside vendors for over a dozen years. He completed numerous interpreting assignments at the Cleveland Clinic and was familiar with its operations and procedures.

Defendant argues that the job for which Plaintiff applied entails more than verbal interpretation skills. The position also requires interpretation of written medical documents, coordinating patient services, scheduling appointments, interacting with other Clinic departments, and demonstrating exemplary problem-solving and interpersonal skills. Defendant contends that Plaintiff's skill level "paled" in comparison to that of the four successful candidates.

The *Burdine* court instructs in pertinent part: "[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability." *Burdine*, 450 U.S. at 259.

"Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

At this stage, the court determines whether a reasonable juror could find that the

plaintiff's qualifications were equivalent to those required for the position. That is, whether the plaintiff presents "credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *George v. Youngstown State University,* 966 F.3d 446, 464 (6th Cir. 2020).

In its response to the EEOC's inquiry, Defendant grudgingly acknowledges that Plaintiff met the job's minimum qualifications, but that he lacked the preferred skills. (ECF DKT #29-4 at 4). The Court finds that Plaintiff has satisfied his burden on the second factor of his prima facie case – that he possesses at least the minimum required qualifications for the Healthcare Interpreter/GPS Coordinator position.

The next factor under consideration is whether Plaintiff has shown that he was treated less favorably as a Coptic Christian than similarly-situated Muslim candidates.

"Similarly-situated" is not an insurmountable hurdle. Plaintiff and the four successful candidates share the basic skills and experience for interpreting in a medical setting and all were selected out of a pool of 68 to be interviewed in person by the GPS Department panel. "To be considered 'similarly situated' under the fourth element, 'the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects.'" *Jones v. City of Franklin*, 468 F.App'x. 557, 562 (6th Cir. 2012) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). "The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated[.]'" *Ercegovich*, 154 F.3d at 352; *see also Arnold v. City of Columbus*, No. 11-3459, 2013 WL 628447, at *6 (6th Cir. Feb. 20, 2013); *Martin v. Toledo Cardiology Consultants, Inc*., 548 F.3d 405, 412

(6th Cir. 2008).

The next step is whether a reasonable jury could find that those treated more favorably are outside of the protected class. Plaintiff declares that "there is abundant evidence that the individuals who were hired were outside of the Plaintiff's protected class of being a Christian" and that "all of the individuals who were successful belonged to the Muslim faith." (Opposition Brief, ECF DKT #29, at 11-12).

In his Affidavit (ECF DKT #29-1, ¶ 16), Plaintiff states regarding the successful candidates: "That I learned during May and June of 2015, that all of these individuals belong to the Muslim faith as a result of personal conversations I had with these individuals and simply because the names clearly identify the individuals as being Muslim."

In his deposition, Plaintiff testifies: "Mustafa [Bouamaria] is hiring only Muslim people." and "Mustafa is the one choosing people." (ECF DKT #28-2 at 26, 31). Also: "Because I'm Christian and he's Muslim and he doesn't like Christian [sic]." *Id*. at 31.

Plaintiff additionally points to the deposition of Mustapha Bouamaria, the GPS Department Supervisor. (ECF DKT #28-3 at 20-21). Regarding Nagla Ezzat who was hired for the first open position, there was the following exchange:

> **Q**. "I'm not saying that that's important to you, but I'm saying as far as you know she's Muslim?"
>
> **A**. "We never talk about her beliefs. I mean I know frequently she asks for holidays, Muslim holidays."

For its part, Defendant argues that Plaintiff fails to show by a preponderance of the evidence that the individuals who were hired were outside the protected class, *i.e*., not

-11-

members of the Christian faith. Defendant insists that Plaintiff only offers mere speculation and opinion, not admissible evidence, about the faith of the individuals chosen over him.

In Bouamaria's deposition, he surmises about Nagla Ezzat's beliefs based upon the days off she requested. In his own deposition, Plaintiff is of the opinion that Bouamaria hires only Muslims because he does not like Christians.

An applicant's religion is unknown to Defendant and an applicant is never asked to disclose that personal datum. Unless an individual chooses to self-identify as a member of a religious group, it is never brought to Defendant's attention. It is irrelevant to an interpreter's job duties. (Defendant's Response Letter to EEOC, ECF DKT #29-4 at 6).

Plaintiff's Affidavit provides little help to bolster his argument. That Plaintiff can identify Muslims by their names is not persuasive. Plaintiff points to no authoritative basis for linking names and religions, nor does he account for the fact that people change their names after marriage or for personal reasons.

Plaintiff swears that he learned in personal conversations the faith of the four individuals who were hired instead of him. (ECF DKT #29-1, ¶ 16). Defendant contends that this is not evidence because it is inadmissible hearsay.

The Court agrees that if asserted for the truth of the selected candidates' alleged representations, this statement is the very definition of hearsay. Fed.Evid.R. 801. "Hearsay evidence may not be considered on summary judgment." *See Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). Delving deeper, the Court finds that no hearsay exception applies to render the statement of religious membership admissible.

Pursuant to Rule 801(d)(2)(D), a statement offered against an opposing party and made by the party's agent or employee on a matter within the scope of that relationship and while it existed is not hearsay. "Rule 801(d)(2)(D) is designed to bind the employer where one of its managerial employees makes a statement within the scope of the employee's duties as a manager." *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 750 (6th Cir. 2005). The statements allegedly made in conversations with Plaintiff were made by interpreter/coordinators and not by managers or supervisors in the context of their job responsibilities. *See Jacklyn,* 176 F.3d at 928 ("There is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer").

Therefore, the Court concludes that Plaintiff is only able to provide his own opinion, speculation and conjecture about the faith held by his comparators. Any statements made in conversations with the successful candidates are hearsay and are not admissible. Plaintiff has failed to demonstrate the last factor of his prima facie case of disparate treatment religious discrimination by a preponderance of the evidence.

**Retaliation**

Plaintiff also claims Defendant is liable for Unlawful Retaliation under R.C. § 4112.02. As noted previously, the standard for state law discrimination claims asserted under Section 4112 of the Ohio Revised Code is the same as the standard for federal discrimination claims asserted under Title VII and related civil rights statutes.

To establish a claim of retaliatory discrimination, a plaintiff first must establish a prima facie case by showing that: "1) the plaintiff engaged in an activity protected by Title

-13-

VII; 2) the exercise of the plaintiff's civil rights was known to the defendant; 3) the defendant thereafter undertook an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action." *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 521 (6th Cir.2002); *Laney v. Ohio Dept. of Youth Services*, 719 F.Supp.2d 868, 882 (S.D.Ohio 2010).

There is no dispute that Plaintiff engaged in protected activity when he filed an EEOC Charge against Defendant for religious discrimination on June 23, 2014. Defendant contests, however, that Plaintiff can satisfactorily establish the other three elements of his prima facie case.

Plaintiff asserts that there is overwhelming circumstantial evidence that Bouamaria, the hiring manager, knew about Plaintiff's 2014 EEOC Charge. (Opposition Brief, ECF DKT #29 at 15). In order to fully respond to the EEOC's inquiries, Defendant must have consulted with the members of the GPS Department Panel (including Bouamaria), who interviewed Plaintiff and unanimously declined to extend him an offer.

However, on deposition, Bouamaria testified that the first he learned of the EEOC Charge by Plaintiff was in 2016. (ECF DKT #29-2 at 5). In addition, Bouamaria was unavailable for consultation with Defendant's legal team on this matter while he was on medical leave during August and September 2014. (Bouamaria Declaration, ECF DKT #30-4).

At a minimum, Plaintiff can demonstrate that Defendant Cleveland Clinic (as an institution) had knowledge of Plaintiff's protected activity. Defendant responded to the Charge by a letter dated August 20, 2014. (ECF DKT #29-4).

Next, Plaintiff must make an evidentiary showing of Defendant's adverse employment action against him following the exercise of his protected civil rights. Plaintiff contends that within a month of filing the EEOC Charge, he began receiving a decreasing number of interpreting assignments at the Main Campus. (Plaintiff's Affidavit, ECF DKT #29-1). Moreover, in 2015, Plaintiff's wife no longer was assigned interpreting services at the Main Campus. *Id*. Despite repeated requests from Plaintiff's Vocalink supervisor, Plaintiff and his wife did not get their ID badges for The Cleveland Clinic Main Campus renewed. *Id.* After Spring 2015, Plaintiff was never assigned to any further Arabic language interpretation jobs at the Defendant's Main Campus. *Id*.

However, the evidence shows that requests for interpretation services came from Defendant, but assignments were made by Vocalink. According to the Declaration of Jill A. Mead, Quality & Compliance Counsel with Vocalink, Inc.: "Plaintiff accepted interpreting assignments through Vocalink at the Cleveland Clinic for the period February 17, 2014 through March 30, 2015." (ECF DKT #28-6). Further, "for the period February through July 2014, Plaintiff accepted 18 interpreting assignments at the Cleveland Clinic's Main Campus as well as four at its satellite locations; and for the period August 2014 through March 2015, all the assignments that Plaintiff accepted were at the Cleveland Clinic's Main Campus." *Id.*

In Plaintiff's deposition testimony, he acknowledges that assignments were offered at the satellite locations of the Cleveland Clinic, but he would not accept them for economic reasons. In the Spring of 2015, Plaintiff was told by his Vocalink supervisor that he would not be sent to the Main Campus for the time being, but there was still substantial need for services at the satellite locations. (Exhibit 11, ECF DKT #28-2 at 85). Plaintiff testified: "I

-15-

will not take any satellite [sic]. She offered me to go to satellite [sic]. I refused to go there because it's not worth the time to go there. They don't pay for miles. They only pay an hour minimum." (ECF DKT #28-2 at 40-41).

Plaintiff speculates that Bouamaria was behind the decision not to assign him to the Main Campus: "So I felt that Mustafa -- *there is no evidence of that*, but I felt Mustafa is the one who told her don't bring him back again to the Clinic when I file a claim against Cleveland Clinic at the EEOC." (ECF DKT #28-2 at 28). (Emphasis added).

With regard to the failure to renew Plaintiff's ID badge, Bouamaria does not independently recollect whether he was asked to look into the problem. (ECF DKT #29-2 at 18). Nevertheless, an email chain attached to Bouamaria's Declaration evidences that both Plaintiff's and his wife's ID badges were renewed on February 16, 2015. (ECF DKT #30-4, Exhibit 1).

For his prima facie case, Plaintiff must show a reasonable causal connection between his protected activity and the adverse employment actions he alleges he suffered. Defendant rightfully emphasizes that Plaintiff's assignments came from the vendor, Vocalink, and not from the Cleveland Clinic. Even if the decision not to send Plaintiff to the Main Campus was shown to be motivated by Bouamaria, nine months passed between the filing of the EEOC Charge (June 23, 2014) and the notification from Vocalink (April 15, 2015) that only satellite location assignments would be available.

Even construing the evidence in Plaintiff's favor, it cannot be ignored that Plaintiff did perform interpreting work at the Main Campus after the Charge was filed. According to Vocalink, "for the period August 2014 through March 2015, all the assignments that Plaintiff

-16-

accepted were at the Cleveland Clinic's Main Campus." (Mead Declaration, ECF DKT #28-6). And Plaintiff refused the satellite location assignments for reasons unrelated to religious discrimination. (Plaintiff's Deposition, ECF DKT #28-2 at 40-41). Plaintiff learned in January of 2015 that there was an issue with the renewal of his ID badge. (Plaintiff's Affidavit, ECF DKT #29-1). The badge was renewed in February. (Bouamaria Declaration, ECF DKT #30-4, Exhibit 1).

Plaintiff's burden is not onerous, but Plaintiff must show a genuine factual dispute about retaliation by a preponderance of the evidence in order to prevail on his prima facie case. Plaintiff has failed to demonstrate an adverse employment action by Defendant either by decreasing Plaintiff's interpreting assignments or by refusing to renew the necessary ID badges which is causally connected to the filing of Plaintiff's EEOC Charge.

### III. CONCLUSION

Plaintiff's shortcomings in the presentation of a prima facie case for disparate treatment Religious Discrimination and for Retaliation justify the entry of summary judgment for Defendant on the remaining claims of Plaintiff's First Amended Complaint. Therefore, the Motion (ECF DKT #28) of Defendant Cleveland Clinic Foundation for Summary Judgment is granted.

**IT IS SO ORDERED.**

**DATE: March 11, 2021**

                                 s/Christopher A. Boyko
                                 **CHRISTOPHER A. BOYKO**
                                 **Senior United States District Judge**